UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TUMELSON FAMILY LIMITED PARTNERSHIP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WORLD FINANCIAL NEWS NETWORK, et al., <br><br> Defendants. | CASE NO. C03-1340JLR <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the court on Defendants' post-trial motions. Defendant Joseph de Beauchamp and World Financial News Network Corp. ("WFNN") move for judgment as a matter of law under Fed. R. Civ. P. 50(b) (Dkt. # 281). Defendant Ronald Slaughter moves for judgment as a matter of law or, in the alternative, for a new trial (Dkt. ## 282, 284), as does Defendant Kelvin Chin (Dkt. # 285). For the reasons stated below, the court DENIES Mr. de Beauchamp's and WFNN's motion, DENIES Mr. Chin's motion, and DENIES Dr. Slaughter's motions.

## II. BACKGROUND

In April 2005, the jury returned a verdict finding against all of the Defendants on virtually every claim the Tumelsons made against them. After receiving the parties' input on a form of judgment and post-trial motions, the court entered judgment. Because the

ORDER – 1

jury found all Defendants liable under the Washington State Securities Act ("WSSA"), the judgment imposed joint and several liability on all Defendants under RCW § 21.20.430(3). With the exception of Defendant Anthony Lucero, who made no post-trial motions, each Defendant seeks judgment as a matter of law. In the alternative, Dr. Slaughter and Mr. Chin seek a new trial under Fed. R. Civ. P. 59.

When the court entered judgment in this action, it noted that trial transcripts were unavailable at the time, and directed each party that wished to supplement post-trial briefing with citations to the transcript to provide a declaration that it had ordered a transcript from the court reporter. As of the end of June 2005, no Defendant had ordered a trial transcript, although several had telephoned the court reporter to request price quotes for portions of the transcript. For this reason, the court declines to permit supplemental briefing.

### III. ANALYSIS

**A.   Judgment as a Matter of Law is Inappropriate Because Substantial Evidence Supports the Jury's Verdict.**

The court's review of a motion for judgment as a matter of law under Fed. R. Civ. P. 50 "mirrors" its review of a motion for summary judgment under Fed. R. Civ. P. 56. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must review the trial record and draw all inferences from the evidence in the light most favorable to the non-moving party. Id. The court must not make credibility determinations or weigh the evidence. Id. The court must disregard evidence favorable to the moving party, unless that evidence is uncontroverted or unimpeached. Id. at 151. The court must uphold the jury's verdict if it is supported by substantial evidence. Mockler v. Multnomah County, 140 F.3d 808, 815 n.8 (9th Cir. 1998). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the

ORDER – 2

evidence." Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999) (internal quotations omitted). The court can overturn the jury's verdict only if there is no legally sufficient basis for it. Bell v. Clackamas County, 341 F.3d 858, 865 (9th Cir. 2003). Ultimately, the court will grant judgment as a matter of law only "if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury." Mockler, 140 F.3d at 815 n.8 (internal quotations omitted).

       **1.**     **WFNN and Mr. de Beauchamp Are Not Entitled to Judgment as a Matter of Law.**

The court first turns to WFNN and Mr. de Beauchamp, who challenge the sufficiency of evidence supporting the verdict against them, and additionally claim that the court should overturn the jury's verdict because the statute of limitations on each claim had run. The court emphatically rejects the latter proposition. Defendants presented no evidence regarding a statute of limitations defense at trial, and did not request jury instructions on the defense. The court assumes that they made a calculated decision not to do so, because they were aware that if they did, the Plaintiffs would be able to introduce evidence regarding an investigation by the Washington Department of Financial Institutions ("DFI") into fraud and other improprieties at WFNN. Leading up to trial, Plaintiffs had consistently argued that it was a telephone call from a DFI investigator and subsequent events that first alerted them to the Defendants' wrongdoing and thus triggered the statute of limitations. Because the Defendants did not want the jury to consider the highly damaging evidence of the DFI investigation, including DFI's preliminary statement of the results of its investigation, they did not present a statute of limitations defense. The court will not permit WFNN or Mr. de Beauchamp to resurrect the defense now.

ORDER – 3

As to Mr. de Beauchamp's and WFNN's contentions regarding the sufficiency of the evidence against them, the court will not disturb the jury's verdict. There was ample evidence that Mr. de Beauchamp engaged in a broad range of negligent, reckless, and intentional conduct that deceived the Tumelsons regarding WFNN's viability and its prospects for success. There was substantial evidence that this conduct led the Tumelsons to purchase WFNN stock and to reaffirm those purchases. The court finds no basis for granting either Mr. de Beauchamp or WFNN judgment as a matter of law.

**2.    Dr. Slaughter is Not Entitled to Judgment as a Matter of Law.**

In contrast to the wealth of evidence supporting the jury's verdict against WFNN and Mr. de Beauchamp, the jury heard less evidence regarding Dr. Slaughter. Nonetheless, the jury returned a verdict finding Dr. Slaughter liable for violating WSSA and breaching his fiduciary duty to the Plaintiffs.

The WSSA imposes two varieties of liability. Primary liability exists for anyone who "in connection with the offer, sale, or purchase of any security, directly or indirectly" engages in the following conduct:

> (1) . . . employ[s] any device, scheme, or artifice to defraud;
> (2) . . . make[s] any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> (3) . . . engage[s] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

RCW § 21.20.010. Secondary liability attaches to "[e]very person who directly or indirectly controls" a seller with primary liability, to "every partner, officer, director or person who occupies a similar status or performs a similar function" for a seller with primary liability, to "every employee of such seller . . . who materially aids in the transaction" that gave rise to primary liability, and to "every broker-dealer, salesperson, or person exempt under the provisions of RCW 21.20.040 who materially aids in the transaction." RCW § 21.20.430(3). In virtually every opinion construing the WSSA,

ORDER – 4

Washington courts have emphasized an obligation to construe its provisions broadly to protect investors. E.g., Cellular Engineering, Ltd. v. O'Neill, 820 P.2d 941, 945 (Wash. 1991).

The evidence presented at trial reveals that the Tumelsons had only two interactions with Dr. Slaughter. First, Kelly Tumelson and Katie Taylor spoke to him at a December 1999 WFNN Christmas party. Second, Katie Taylor spoke to him at a dinner at the Rainier Club in Seattle, likely in early 2000. Kelly Tumelson, Katie Taylor, and Bert Campbell, another WFNN investor, testified that Mr. de Beauchamp made a speech to party attendees in which he introduced Dr. Slaughter specifically as a member of WFNN's board of directors. The three witnesses testified that Dr. Slaughter acknowledged his introduction with a wave or other gesture. It was this introduction that led Kelly Tumelson and Katie Taylor to approach Dr. Slaughter at the party. Neither witness provided testimony about particular misrepresentations that Dr. Slaughter made when they spoke to him. Both remembered that he acknowledged his attendance at that month's WFNN meeting in Barcelona, Spain. Both recalled that Dr. Slaughter made favorable statements regarding WFNN and its prospects. Katie Taylor's recollection of her winter 2000 meeting with Dr. Slaughter was similarly vague, although she recalled him discussing WFNN favorably. Although Dr. Slaughter's name appeared on both the Confidential Private Offering Memorandum and Executive Summary that the Tumelsons relied on in part in making their initial investment, the evidence established conclusively that Dr. Slaughter was unaware of this.

The theme of Dr. Slaughter's case was that he was just another investor who had lost a large investment in WFNN. He had invested several hundred thousand dollars before he first met the Tumelsons. He presented uncontroverted evidence that he invested an additional $200,000 soon after the December 1999 Christmas party at which he met the Tumelsons. This evidence is a powerful indicator that Dr. Slaughter was either

ORDER – 5

unaware of the widespread improprieties at WFNN, or believed that they were immaterial to its prospects for success.

Based on this evidence, a jury verdict based on Dr. Slaughter's knowing misrepresentation to the Tumelsons would be unsupportable. No reasonable juror could find that Dr. Slaughter knowingly misled the Tumelsons when his subsequent investment in WFNN showed him to be convinced of WFNN's prospects for success.

The court upholds the jury's verdict, however, because substantial evidence shows that Dr. Slaughter made material omissions in his contacts with the Tumelsons. This evidence supports both primary and secondary liability under WSSA. As to primary liability, the jury could have found that Dr. Slaughter "omit[ted] to state a material fact" in violation of RCW 21.20.010(2). The jury could have determined that even though Dr. Slaughter did not know of the numerous improprieties at WFNN, he should have known. The evidence revealed that Dr. Slaughter was a close friend of Mr. de Beauchamp, and that he served (at a minimum) in an advisory role for WFNN. He was close enough to the company that WFNN paid his expenses to attend a company-wide meeting in Spain. In addition, although Dr. Slaughter vigorously disputes that he was a member of the WFNN board of directors, evidence that he acknowledged his introduction as a board member, that he attended Barcelona company meetings, and that he accepted a $10,000 check from WFNN with the notation "Board of Directors pay," provides a sufficient basis for the jury to conclude that Dr. Slaughter should have known[1] of improprieties at WFNN.

---

[1] The court is unaware of Washington authority discussing whether primary WSSA liability for misrepresentations or omissions can arise where the defendant did not actually know, but should have known, of facts that made his statements or omissions untrue. The statute itself is silent, and Washington courts have been unwilling to imply additional WSSA elements under similar circumstances. E.g., Kittilson v. Ford, 608 P.2d 264, 265 (Wash. 1980) (refusing to find a scienter requirement for WSSA violations). In interpreting language in Washington's Franchise Investment Protection Act identical to the misrepresentation or omission requirement in RCW § 21.20.010, another Washington court held that the statute

ORDER – 6

In a primary liability case under WSSA involving an omission of fact, a rebuttable presumption arises that the omitted fact was material. Guarino v. Interactive Objects, Inc., 86 P.3d 1175, 1187 (Wash. Ct. App. 2004). A defendant can rebut that presumption "by showing that the plaintiff's decision would have been unaffected even if the omitted fact had been disclosed." Id. Here, the jury was justified in concluding that the Tumelsons would not have made additional investments in WFNN or reaffirmed their overall investment if Dr. Slaughter had revealed the true state of WFNN.

As a final attack on his WSSA liability, Dr. Slaughter argues that even if he omitted facts in his dealings with the Tumelsons, he did not do so "in connection with the offer, sale, or purchase of any security" as required under RCW § 21.20.010. Dr. Slaughter contends that he did not "solicit, or even talk about, any stock sale" with the Tumelsons, and that "the subject of WFNN stock purchases or sales was never mentioned." Slaughter Mot. at 8. While no Washington authority directly addresses the import of the "in connection with" requirement, federal decisions interpreting identical language in § 10b-5 of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) have construed it broadly.[2] It has been held to apply to any "[d]eception related to the value or merit of the securities in question," Ambassador Hotel Co. v. Wei-Chuan Inv., 189 F.3d 1017, 1026 (9th Cir. 1999)), to any assertion "reasonably calculated to influence the investing public, McGann v. Ernst & Young, 102 F.3d 390, 396 (9th Cir. 1996), and to any representation that "somehow touches upon or has some nexus with any securities transaction," SEC v. Rana Research, 8 F.3d 1358, 1362 (9th Cir. 1993) (internal

---

supported an action for "unintentional misrepresentation or admission." Kirkham v. Smith, 23 P.3d 10, 13 (Wash. Ct. App. 2001). The court reaches the same conclusion here.

[2]Absent controlling Washington authority, Washington courts turn to federal authority to interpret analogous provisions of WSSA. E.g., Hines v. Data Line Systems, Inc., 787 P.2d 8, 13 (Wash. 1990).

ORDER – 7

quotations omitted).  In its most recent pronouncement on the subject, the Supreme Court reiterated that "in connection with" should be "construed not technically and restrictively, but flexibly to effectuate its remedial purposes."  SEC v. Zandford, 535 U.S. 813, 819 (2002) (internal citation and quotation omitted).  This squares well with the Washington Supreme Court's repeated mandate to construe the WSSA broadly.  Under the liberal standards applicable to WSSA, Dr. Slaughter's omissions of fact to the Tumelsons were "in connection with" a sale of securities.  The evidence shows that Dr. Slaughter knew or should have known that he was speaking to WFNN investors when he met Kelly Tumelson and Katie Taylor at the December 1999 party and that they would rely on him, at least in part, in making further investment decisions.

The same evidence that supports Dr. Slaughter's primary liability also supports a finding of secondary liability against him.  The jury could have found that Dr. Slaughter was a director of WFNN or that he "occupied a similar status" or "performed a similar function."  RCW § 21.20.430(3).  The burden thus shifted to Dr. Slaughter to show that he "did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which the liability is alleged to exist."  Id.  On the evidence presented, the jury could reasonably have found that Dr. Slaughter did not meet that burden.

The court finds that substantial evidence supports the jury's verdict against Dr. Slaughter on the Tumelsons' WSSA claim.  Although Dr. Slaughter may well have been less culpable than other Defendants, the WSSA does not distinguish levels of culpability. Judgment as a matter of law is not appropriate in light of the evidence presented at trial.

In reviewing the evidence against Dr. Slaughter, the court has focused on the WSSA claim.  That claim is critical, as it provides the basis for joint and several liability as well as the basis for the Tumelsons' pending request for attorneys' fees. The court also

ORDER – 8

finds, however, that substantial evidence supported the jury's verdict that Dr. Slaughter breached a fiduciary duty to Plaintiffs.

### 3. Mr. Chin is Not Entitled to Judgment as a Matter of Law.

The court's discussion of the Tumelsons' WSSA claim against Dr. Slaughter also applies to Mr. Chin. Mr. Chin had only one interaction with the Tumelsons, an October 1999 WFNN marketing meeting. There was evidence that Mr. Chin knew that WFNN investors were present at the meeting. During the meeting, where Mr. Chin was held out as WFNN's Chief Financial Officer ("CFO"), Mr. de Beauchamp made numerous bullish statements about WFNN's status and its prospects for success. He boasted that he could complete a WFNN initial public offering by Christmas, only two months away. As with Dr. Slaughter at the later Christmas party, the jury could have found that Mr. Chin failed to provide information that he knew or should have known in the face of Mr. de Beauchamp's misrepresentations. They also could have found that the CFO of a company reasonably should have known of WFNN's numerous ills, and should have communicated that knowledge to investors.

The evidence also showed that Mr. Chin made affirmative, material misrepresentations at the October meeting. Both Kelly Tumelson and Katie Taylor testified that he made representations regarding revenues that WFNN could make from its website. He stated that he believed that all stock brokers would use WFNN, and he projected revenue based on his statement that the WFNN website would be receiving 3.5 million hits per day within the next month. Mr. Chin argues that his projections are not actionable, which is true as a general proposition. The jury could have found, however, based on Mr. Chin's admissions that he had very limited access to WFNN information, that he had no foundation for making these projections, and misrepresented that he did.

ORDER – 9

**B.     Defendants Slaughter and Chin Are Not Entitled to a New Trial.**

A court has discretion to grant a new trial if it finds that the jury's verdict is "contrary to the clear weight of the evidence and the verdict results in the miscarriage of justice." City Solutions, Inc. v. Clear Channel Communications, Inc., 365 F.3d 835, 843 (9th Cir. 2004). Unlike its review of a motion for judgment as a matter of law, a court reviewing a motion for a new trial must weigh the evidence and credibility of witnesses. Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990).

In reviewing the evidence presented at trial, the court finds no basis for concluding that the jury reached a verdict against the clear weight of the evidence as to either Mr. Chin or Dr. Slaughter. Although a different jury might well have found in either Defendant's favor, the court does not find that this jury's verdict was a miscarriage of justice.

Mr. Chin and Dr. Slaughter also request a new trial because they had only fifteen minutes to present their closing argument. The court finds no merit in this contention. At the close of evidence, the court reiterated its intent to grant 45 minutes for the Tumelsons' closing argument and 45 minutes for the Defendants' collective closing arguments. The court invited Defendants to inform the court if they could not agree on an appropriate division of time among them. Not only did no Defendant object to the court's allocation of 45 minutes, no Defendant later approached to court to complain that they had been unable to reach an equitable division of closing time. Under these circumstances, Defendants have no basis for objection.

Finally, the court turns to Mr. Chin's argument that the jury's verdicts against him are inconsistent. As noted above, Defendant Chin's only interaction with the Tumelsons was in October 1999. At that point, the Tumelsons had already made the bulk of their investment in WFNN – $245,000 according to the jury's findings. Verdict Form at 9. After meeting Mr. Chin, the Tumelsons made two additional investments. Katie Taylor

ORDER – 10

and her husband invested an additional $10,000, and the Tumelson Family Limited Partnership ("TFLP") invested $20,000. Later, the Tumelsons were given an opportunity to affirm their collective investment in WFNN, and did so. The jury found that Mr. Chin was responsible for all of the Tumelson investments except the TFLP's $20,000 investment. Mr. Chin argues that this verdict is inconsistent.

Mr. Chin faces a high burden in seeking a new trial based on allegedly inconsistent verdicts. The court must uphold the jury verdict "unless it is impossible under a fair reading to harmonize the answers." Magnussen v. YAK, Inc., 73 F.3d 245, 246 (9th Cir. 1996). Mr. Chin must show an "irreconcilable inconsistency" in the verdicts, and the court must endeavor to reconcile the verdicts "by exegesis if necessary." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1038 (9th Cir. 2003) (internal quotation omitted).

Under this standard, the court affirms the jury's verdicts. The TFLP investment was unusual among the other Tumelson investments. The testimony was that Defendant Lucero had discussed the investment with Kelly Tumelson and his father as a method of estate planning. Mr. Chin had no direct influence on that decision. As noted above, a reasonable jury could have found that Mr. Chin's failure to reveal to the Tumelsons information that he knew or should have known about WFNN's condition, coupled with his affirmative misrepresentations, were sufficient to make him liable for all of the Tumelson investments, because the jury could have found that the Tumelsons would not otherwise have reaffirmed their investment. The jury could also have found, however, that Mr. Chin had no input into the unique considerations underlying the TFLP investment. The jury's verdicts, therefore, are not irreconcilable. The court declines to award a new trial on this basis.

The court notes that Mr. Chin and Dr. Slaughter have raised additional arguments in support of their motions. The court finds none of them sufficient to warrant a new trial.

ORDER – 11

## IV. CONCLUSION

For the foregoing reasons, the court DENIES the Defendants' post-trial motions (Dkt. ## 281, 282, 284, 285). Having resolved whether all Defendants are still liable, the court can now consider the Tumelsons' motion for attorneys' fees and costs (Dkt. # 286). The court directs the clerk to renote that motion for today's date.

DATED this 15th day of July, 2005.

s/James L. Robart
_____
JAMES L. ROBART
United States District Judge

ORDER – 12