1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  TUMELSON FAMILY LIMITED
   PARTNERSHIP, et al.,

9                    Plaintiffs,            CASE NO. C03-1340JLR

10         v.                               ORDER

11 WORLD FINANCIAL NEWS
12 NETWORK, et al.,

13                    Defendants.

14

15

16                        **I.  INTRODUCTION**

17         This matter comes before the court on Plaintiffs' motion for attorneys' fees and

18 costs.  (Dkt. # 286).  Only Defendant Ronald Slaughter has opposed the motion.  The

19 court has considered the parties' briefing and supporting declarations.  For the reasons

20 stated below, the court GRANTS Plaintiffs' motion to the extent that it seeks to establish

21 Plaintiffs' entitlement to attorneys' fees and costs, but DENIES it to the extent that it

22 seeks a specific award.  The court grants Plaintiffs leave to submit a second motion in

23 support of their request for attorneys' fees, consistent with the guidelines in this order.

24                        **II.  BACKGROUND**

25         In April 2005, the jury returned a verdict against all of the Defendants on virtually

26 every claim the Plaintiffs (collectively the "Tumelsons") made against them.  After

27 receiving the parties' input on a form of judgment and post-trial motions, the court

28

ORDER – 1

entered judgment.  The judgment imposed joint and several liability on all Defendants.  In its most recent order, the court upheld the judgment after several Defendants challenged it in post-trial motions.  The Tumelsons now seek their attorneys' fees under the WSSA, as well as their litigation costs under both federal and state law.

### III.  ANALYSIS

The Tumelsons seek approximately $37,000 in costs under 28 U.S.C. § 1920, $2,900 in expert witness fees under Fed. R. Civ. P. 26(b)(4)(c), $481,000 in attorneys' fees under RCW § 21.20.430(1), and $19,000 in costs under RCW § 21.20.430(1).  The Tumelsons request that the court impose joint and several liability on all Defendants for their costs and attorneys' fees.

**A.    The Court Will Not Require the Tumelsons to Segregate Their Fee Request Between Defendants and Between Successful and Unsuccessful Claims.**

At the threshold, Dr. Slaughter contends that the Tumelsons have erred by not partitioning their costs and fees request into separate components for each claim that they brought against each Defendant.  Dr. Slaughter notes that only the Tumelsons' WSSA claims provide a basis for attorneys' fees, yet the Tumelsons brought a variety of other claims against each Defendant.  The Tumelsons did not succeed on all of those claims, as the court eliminated many of them on summary judgment.  For example, although Plaintiffs originally brought fraud, negligent misrepresentation, federal securities fraud, breach of fiduciary duty, and WSSA claims against Dr. Slaughter, only the latter two claims survived summary judgment.  Dr. Slaughter argues first that he should not share liability for attorneys' fees that the Tumelsons incurred pursuing claims against other Defendants; second, that the Tumelsons should receive no attorneys' fees for pursuing unsuccessful claims against him.

The factual and legal underpinnings of the Tumelsons' WSSA claims are fatal to both of Dr. Slaughter's arguments.  As to the first, the WSSA's broad remedial scope

ORDER – 2

ensures that defendants who unlawfully sell securities share liability with a broad class of defendants who contribute to the sale.  Not only does the Act extend liability to, *inter alios*, "[e]very person who directly or indirectly controls" a seller with primary liability, "every partner, officer, director or person who occupies a similar status or performs a similar function" for a seller with primary liability, "every employee of such seller . . . who materially aids in the transaction" that gave rise to primary liability, it also makes such persons "liable jointly and severally with and to the same extent as the seller . . . ." RCW § 21.20.430(3).  Primary liability consists of "the consideration paid for the security, together with interest . . ., costs, and reasonable attorneys' fees."  RCW § 21.20.430(1).  Because WSSA establishes that attorneys' fees are a component of principal liability, and Dr. Slaughter shares principal liability jointly with the other Defendants,[1] the court concludes that Dr. Slaughter shares liability jointly and severally for the Tumelsons' attorneys' fees and costs expended on their WSSA claims.[2]

---

[1]Although the jury's verdict does not allow the court to discern whether it imposed primary or secondary liability (or both) on Dr. Slaughter, the court has already determined in its order on Defendants' post-trial motions that the evidence against him supports a verdict on either basis.  When the Tumelsons submitted a proposed judgment imposing joint and several liability on every Defendant for every investment (with the exception of Defendant Chin, who the jury found was not liable for one of the Tumelsons' investments), the court provided the Defendants with an opportunity to object.  Although Dr. Slaughter objected to the judgment on several grounds, he did not object to the imposition of joint and several liability.

[2]The court acknowledges that joint and several liability leads to inequities in this case.  For example, Defendants de Beauchamp and Lucero refused to provide discovery or otherwise participate in this action for an extended time, causing the Tumelsons to incur additional fees obtaining and enforcing court orders against them.  Dr. Slaughter is not at fault for this misfeasance, yet he shares liability for it.  Nonetheless, the text of the WSSA and Washington courts' consistently liberal interpretation of it (e.g., Cellular Engineering, Ltd. v. O'Neill, 820 P.2d 941, 945 (Wash. 1991)) compel the court's conclusion that it has no discretion to avoid the statute's mandate of joint and several liability.  Dr. Slaughter retains the right to pursue a contribution action against the other Defendants.  RCW § 21.20.430(3).

ORDER – 3

As to Dr. Slaughter's second argument, the court cannot, for the most part, separate the Tumelsons' pursuit of their WSSA claims from their pursuit of other claims against the Defendants.  In addition to their WSSA claims, the Tumelsons sued all Defendants for breach of fiduciary duty, negligent misrepresentation, common law fraud, federal securities fraud, and failure to register securities.  In each cause of action, the Tumelsons alleged wrongdoing in connection with either selling WFNN stock to them or in keeping them oblivious to the truth about WFNN so that they would retain the stock. The WSSA imposes primary liability on anyone who "in connection with the offer, sale, or purchase of any security, directly or indirectly" engages in the following conduct:

> (1) . . . employ[s] any device, scheme, or artifice to defraud;
> (2) . . . make[s] any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or
> (3) . . . engage[s] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

RCW § 21.20.010.  Putting the registration claims aside,[3] each of the Tumelsons' non-WSSA causes of action was sufficient to state a claim for WSSA liability.  For example, the Tumelsons' claims for common law fraud alleged specific misrepresentations and omissions that induced their purchase and retention of WFNN stock.  Although their fraud claims required them to prove elements in addition to those necessary for a WSSA violation (e.g., scienter), the facts that would have proven their fraud claim would also prove their WSSA claim.  Although the Tumelsons ultimately failed to prove every claim against every Defendant, they succeeded in obtaining compensation for the wrongdoing

---

[3]Under the WSSA, a plaintiff who proves that a defendant failed to register securities is entitled to the same remedy as a person who proves that the defendant is primarily or secondarily liable for a fraudulent sale of securities.  RCW § 21.20.430(1) (establishing identical remedy for violations of RCW § 21.20.010 and RCW § 21.20.140).  The jury found that WFNN failed to register the securities it sold to the Tumelsons, but as that finding has no impact on their recovery against the Defendants, the court will not consider the claim further.

ORDER – 4

that caused them to invest in WFNN and retain their investments.  The court therefore declines to require the Tumelsons to segregate fees incurred in pursuing their successful claims from their unsuccessful claims.[4]  Ethridge v. Hwang, 20 P.3d 958, 966 (Wash. Ct. App. 2001) ("[T]he court is not required to artificially segregate time in a case . . . where the claims all relate to the same fact pattern.")  The Tumelsons successfully obtained the relief that each cause of action sought:  compensation for losses resulting from their purchase of WFNN stock.  See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); see also Blair v. Washington State University, 740 P.2d 1379, 1386 (Wash. 1987) (citing Hensley and declining to separate successful claims from related unsuccessful claims).

**B.      On the Record Before It, The Court Cannot Award the Tumelsons the Attorneys' Fees They Request.**

The court now turns to the Tumelsons' request for $480,783.50 in attorneys' fees. The court must determine a reasonable attorneys' fee award using the "lodestar" method. Bowers v. Transamerica Title Ins. Co., 675 P.2d 193, 202 (Wash. 1987).[5]  The court must determine the number of hours the Tumelsons' counsel reasonably expended in pursuing their claims and multiply that number by a reasonable hourly rate.  Id. at 201-202.  The court finds that the numerous attorneys who provided services to the Tumelsons billed at hourly rates ranging from $140 to $350 per hour.  The court finds these rates reasonable in light of prevailing rates in the Seattle area and the complexity of this matter.

---

[4]The court will not award the Tumelsons attorneys' fees that they expended pursuing claims against Defendants who were dismissed from this action.

[5]The parties raise no objection to the application of Washington law to the Tumelsons' attorneys' fees request. Dr. Slaughter does object to the Tumelsons' application of state and federal law to their request for costs, an objection the court addresses in Part III.C., infra.

ORDER – 5

The court cannot, however, determine the number of hours reasonably expended on this litigation.  The Tumelsons' attorneys' fees request encompasses substantial paralegal time in addition to attorney time.  This is not problematic in itself, as Washington courts have recognized that paralegal time is compensable in some instances. The court in Absher Constr. Co. v. Kent Sch. Dist. No. 415, 917 P.2d 1086, 1088 (Wash. Ct. App. 1995), listed six criteria to assist the court in determining whether paralegal time is compensable in an attorneys' fees award:

> (1) the services performed by the non-lawyer personnel must be legal in nature; (2) the performance of these services must be supervised by an attorney; (3) the qualifications of the person performing the services must be specified in the request for fees in sufficient detail to demonstrate that the person is qualified by virtue of education, training, or work experience to perform substantive legal work; (4) the nature of the services performed must be specified in the request for fees in order to allow the reviewing court to determine that the services performed were legal rather than clerical; (5) as with attorney time, the amount of time expended must be set forth and must be reasonable; and (6) the amount charged must reflect reasonable community standards for charges by that category of personnel.

The Tumelsons have provided little information to permit the court to consider the Absher criteria.  Indeed, short of counsel's declaration that each of the eleven people who billed as paralegals have served in that capacity for "many years," the court has no basis to assess their qualifications.  As to the nature of the services they performed, the court has nothing more than an inch-thick sheaf of invoices to guide it in separating compensable legal work from non-compensable clerical work.  A quick review of those invoices reveals numerous entries for paralegal work that is clerical or at least arguably so.

As the Tumelsons will need to submit additional material to address their request for paralegal fees, the court provides these comments regarding the reasonableness of the hours that both attorneys and paralegals expended in this case.  As the record stands, the only means the court has to verify the Tumelsons' assertion that the hours it claims were "reasonably expended" is to engage in an entry-by-entry examination of three years of

ORDER – 6

legal invoices.  The court will not do so.  In determining a reasonable number of hours, the court must make an "equitable judgment" (Hensley, 461 U.S. at 437), and has "a great deal of discretion" in making that judgment.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1993).  Several factors guide the court in exercising its discretion, including the results of the litigation, the prevailing party's partial success on the merits, and whether counsel spent excessive or unnecessary time on the litigation.  Hensley, 461 U.S. at 434-37.  If the Tumelsons bring a second motion for attorneys' fees, the court directs them to make every effort to provide a factual record that will better guide the court in exercising that discretion.

**C.     Although the Tumelsons Are Entitled to Some Costs, They Have Not Established the Right to Costs Under Both Federal and State Law.**

The court now turns to the Tumelsons' request for costs under both federal and state law.  There is no dispute that under either federal or Washington law, the Tumelsons are entitled to costs as the prevailing party.  The Tumelsons, however, seek costs under *both* federal and state law.  Although there is substantial overlap between the two systems with respect to costs, there are also important differences.  Moreover, the Tumelsons fail to address why the court should impose joint and several liability (which only WSSA mandates) on their request for federal costs.

The court declines to award the Tumelsons their requested costs.  Absent legal authority allowing the Tumelsons to treat federal and state law as a smorgasbord (or, in this case, an all-you-can-eat buffet) from which they may pick and choose their costs, the court will not permit them to do so.  The court grants the Tumelsons leave to resubmit their request.

If the Tumelsons bring a second motion for costs, the court directs them to provide a legal basis for awarding costs under both federal and state law.  In so doing, they should consider the impact of Clausen v. M/V New Carissa, 339 F.3d 1049 (9th Cir. 2003), and

ORDER – 7

1    Aceves v. Allstate Ins. Co., 68 F.3d 1160 (9th Cir. 1995).  If the Tumelsons continue to

2    seek costs under federal law, they shall provide a legal basis for the court to impose joint

3    and several liability for such costs.

## IV.  CONCLUSION

4

5            For the foregoing reasons, the court GRANTS the Tumelsons' motion (Dkt.

6    # 286) to the extent it seeks to establish their entitlement to attorneys' fees and costs.  As

7    the motion is insufficient to establish their entitlement to a particular sum for attorneys'

8
     fees and costs, the court DENIES their motion in all other respects.  The court grants
9
     Plaintiffs leave to submit a second motion for attorneys' fees and costs.  If they do so, the
10
     parties need not address matters the court has decided in this order.
11

12           DATED this 1st day of August, 2005.

13

14                                               _____

15                                               JAMES L. ROBART
                                                 United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 8