UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TUMELSON FAMILY LIMITED
PARTNERSHIP, et al.,

                    Plaintiffs,

     v.

WORLD FINANCIAL NEWS
NETWORK, et al.,

                    Defendants.

CASE NO. C03-1340JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on Plaintiffs' second supplemental motion for attorneys' fees and costs (Dkt. # 307).  The court has considered the parties' briefing and supporting declarations.  The court GRANTS Plaintiffs' motion but reduces the amounts awarded for attorneys' fees and costs for the reasons stated below.

## II.  BACKGROUND

In April 2005, a jury returned a verdict against all of the Defendants on virtually every claim the Plaintiffs (collectively the "Tumelsons") made against them.  After the court entered judgment and resolved Defendants' post-trial motions, the court considered the Tumelsons' initial motion for attorneys' fees.  In its order on that motion (Dkt. # 304), the court determined that the Tumelsons were prevailing parties entitled to attorneys' fees and costs, that Defendants would share liability jointly and severally for their attorneys'

ORDER – 1

1  fees under the Securities Act of Washington ("WSSA"), and that the fees the Tumelsons'

2  expended in pursuing their WSSA claims were largely inseparable from the fees

3  expended in pursing their other claims.   For several reasons, the court declined to enter

4  an award of fees and costs.  The Tumelsons now move for their award.

### III.  ANALYSIS

At the outset, the court notes that it will not consider the opposition of Defendants

World Financial News Network, Inc. ("WFNN"), Joseph de Beauchamp, and Deborah de

Beauchamp to the Tumelsons' motion.  When the Tumelsons initially moved for

attorneys' fees, no Defendant except Ronald Slaughter opposed the motion.  Now, WFFN

and the de Beauchamps have filed an opposition to the instant motion.  The court holds

that these Defendants waived their right to object to the Tumelsons' fee request by failing

to respond to the initial motion.  The court will not consider their belated opposition.[1]

In addition, the court will not address Defendant Slaughter's objection to imposing

joint and several liability for attorneys' fees, nor his insistence that much of counsel's

time was spent pursuing claims that are severable from the WSSA claims.  The court

addressed these objections in its initial order on attorneys' fees, and will not repeat its

analysis here.

### A.      The Court Awards the Tumelsons Costs of $6,288.37.

The court applies Washington law to the Tumelsons' request for costs.  Generally,

federal law governing costs applies in actions decided in federal court.  Courts have made

an exception, however, when state law supplies the basis of a federal court's decision and

the state law makes costs a substantive element of damages.  See Clausen v. M/V New

Carissa, 339 F.3d 1049, 1064-65 (9th Cir. 2003).  In Clausen, the court considered the

---

[1]Even if the court were to consider the opposition of WFNN and the de Beauchamps, it would have no effect on its disposition of the instant motion.  These Defendants' opposition consists of nothing more than a statement that they join in Defendant Slaughter's arguments.

ORDER – 2

Oregon Oil Spill Act, which provides strict liability for "damages" that an oil spill causes. Id. at 1061 (quoting Or. Rev. Stat. § 468B.310(1)). The statute defines damages as "damages, costs, losses, penalties, or attorney fees of any kind for which liability may exist under the laws of this state . . . ." Id. (quoting Or. Rev. Stat. § 468B.300(6)). The court held that by including costs as an express element of recovery under the Oil Spill Act, Oregon made costs a component of substantive law rather than procedural law. Id. at 1065. The Clausen court thus held that Oregon law, not federal law, governed the plaintiffs' cost request.[2] Id. at 1066.

Under WSSA, a plaintiff who sues the seller of a security and prevails is entitled to the following relief:

> the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security. Damages are the amount that would be recoverable upon a tender less (a) the value of the security when the buyer disposed of it and (b) interest at eight percent per annum from the date of disposition.

RCW § 21.20.430(1). Like the Oregon statute in Clausen, WSSA provides that costs are an element of the plaintiffs' recovery, thus elevating costs from a procedural right to a substantive one.

The Tumelsons attempt to distinguish Clausen by arguing that RCW § 21.20.430 makes "damages" available only to plaintiffs who do not retain their securities. Because they retained their securities, the Tumelsons argue that while they are entitled to recovery under WSSA, that recovery is not "damages." This argument elevates semantics over substance. Clausen is not so narrow that it applies only to state statutes that use the term

---

[2]Although no party raised the issue, the Clausen court was exercising diversity jurisdiction, whereas this court heard this dispute under its federal question jurisdiction and exercised supplemental jurisdiction over the state law claims. The court finds, however, that the critical factor in Clausen was that state law supplied the rule of decision, not the existence of diversity jurisdiction. 339 F.3d at 1065.

ORDER – 3

"damages." Instead, it applies to any state statute that gives a plaintiff the substantive right to recover costs. WSSA is one such statute. The Tumelsons must rely on state law to recover costs for their WSSA claims.[3]

The Tumelsons seek $6,629.37 in costs under state law. The court finds their request proper with the exception of their request for $341 for unsuccessful efforts to serve persons who never became parties to this action. The court thus awards $6,288.37 in costs. The court also orders that the Defendants shall bear the costs jointly and severally. As noted above, WSSA dictates the use of state law in determining a plaintiff's cost award by making costs a substantive element of recovery. As noted in the court's previous order, WSSA also dictates that persons liable under the statute are "liable jointly and severally with and to the same extent as the seller or buyer . . . ." RCW § 21.20.430(3). WSSA thus mandates joint and several liability for costs.

**B.    The Court Awards Attorneys' Fees of $403,684.72.**

Plaintiffs seek just over $504,000 in attorneys' fees under WSSA. RCW § 21.20.430(1). The court must determine a reasonable attorneys' fee award using the "lodestar" method. Bowers v. Transamerica Title Ins. Co., 675 P.2d 193, 202 (Wash. 1987). The court must multiply the number of hours the Tumelsons' counsel reasonably expended in pursuing their claims by a reasonable hourly rate. Id. at 201-202. The result of this calculation is the "lodestar," which the court can in some cases adjust upward or downward to account for the contingent nature of the attorneys' work or the quality of the attorneys' work. Id. at 205. The party seeking fees bears the burden of proving the reasonableness of its fee request. Mahler v. Szucs, 957 P.2d 632, 650 (Wash. 1998). The

---

[3]Although it might have been possible for the Tumelsons to recover state costs for their WSSA claims and federal costs for other claims, the Tumelsons did not make such a request, presumably because they could not segregate their costs on a claim-by-claim basis. The court therefore applies only state law to the Tumelsons' cost claim.

ORDER – 4

court has broad discretion in determining attorneys' fees, subject to review only for "manifest abuse."  Boeing Co. v. Sierracin Corp., 738 P.2d 665, 682 (Wash. 1987).

Many of the factors relevant to the Tumelsons' attorneys' fees request are not in controversy.  Defendant Slaughter does not allege that the hourly rates of the Tumelsons' counsel are unreasonable, and the court noted in its previous order that the rates are reasonable in light of prevailing rates in the Seattle legal market and the complexity of this matter.  Neither the Tumelsons nor Defendant Slaughter seek an upward or downward adjustment of the lodestar based on the quality of counsel's work or the contingent nature of success in this action.

The only dispute is over the number of hours counsel "reasonably expended."  The Tumelsons have submitted over 23 invoices totaling more than 150 pages documenting legal services dating back to their first meeting with counsel in April 2003.  Counsel have submitted a narrative description of the invoices.  The court appreciates counsel's effort, but notes that counsel focus heavily on proving the *number* of hours they expended, and have devoted much less attention to the question of whether they *reasonably expended* those hours.  The court cannot award attorneys' fees for "hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time."  Bowers, 675 P.2d at 203.  In addition, the Tumelsons request fees for paralegal work, a request that requires additional proof.  August 2, 2005 Order at 6 (citing Absher Const. Co. v. Kent Sch. Dist. No. 415, 917 P.2d 1086, 1088 (Wash. Ct. App. 1995)).  Under these legal standards, only in the rarest cases would counsel be entitled to claim that every hour spent pursuing a case was "reasonably expended."  This is not a criticism of counsel in this case or of attorneys in general, but rather an acknowledgment that attorneys, like everyone else, are imperfect, and will inevitably make missteps in pursuing a case.  Those missteps may be immaterial to their client's ultimate success, but they are material in determining the amount of recoverable attorneys' fees.

ORDER – 5

1    With these observations and the Tumelsons' burden of proof in mind, the court

2    wades into the sheaf of paper describing the efforts of counsel in this case, beginning

3    with their request for paralegal time.  Despite counsel's statement that they have

4    endeavored to remove "clerical" work that their paralegals performed from their fee

5    request, they have not gone far enough.  Their invoices still include numerous entries for

6    unquestionably clerical work (e.g., preparing copies, finalizing copies, scanning

7    documents, creating compact discs).  Even more entries describe time that might

8    constitute legal services, and might be clerical (e.g., preparing exhibits, working on

9    exhibits, making phone calls, reviewing transcripts).  Some describe work that is probably

10   legal (legal research, drafting pleadings).  For the substantial majority of the paralegal

11   time, the Tumelsons do not prove that the time is recoverable under the standards set

12   forth in Absher.  The court must therefore make a substantial deduction for paralegal

13   time.  This is no easy task, as counsel's invoices include neither monthly nor cumulative

14   totals that isolate the time that paralegals spent in this case.  Based on the court's review

15   of the invoices, its estimate of the ratio of paralegal work to attorney work, its estimate of

16   the ratio of reasonably expended paralegal time to time that is arguably clerical, and the

17   lower billing rates that apply to paralegal time, the court deducts 10% from the

18   Tumelsons' fee request.

19

20   Turning to time that attorneys expended, the court begins with deductions for time

21   spent pursuing unsuccessful claims.  The Tumelsons have deducted more than $30,000

22   from their invoices to account for unsuccessful claims, including claims against

23   defendants or potential defendants who were never brought to trial.  The court finds these

24   deductions reasonable and declines to impose further deductions for unsuccessful claims.

25   As to duplicative effort, the court notes that senior attorneys spent a substantial

26   amount of time in this case supervising and reviewing the efforts of junior attorneys.

27   This is to be expected and encouraged.  However, the court must determine how much of

28

ORDER – 6

the supervision and review was reasonable under the circumstances. The court's estimate of the ratio of hours that junior attorneys spent to the hours senior attorneys spent reviewing or supervising their work leads it to impose a 5% reduction in the Tumelsons' fee request to account for duplicative effort.

Finally, the court must determine if, after accounting for the deductions it has already taken, all of the time that attorneys spent was productive. The court has no way of doing so. Counsel offer little assistance in this endeavor, and their invoices do not speak for themselves. As noted above, however, it would be the rare case where every minute of attorney time was invested in productive effort. Based on its review of the invoices, the court deducts an additional 5% from the Tumelsons' fee request to account for unproductive time.

The Tumelsons request $504,605.90 in attorneys' fees, a request that takes into account the $30,000 deduction that the court noted above. The deductions the court imposed above total 20% of this fee request, reducing the award to $403,684.72. The court has considered Defendant Slaughter's objections to specific hours as unreasonable (Slaughter Opp'n at 7-8), and has taken those objections into account in calculating the above reductions.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS the Tumelsons' motion (Dkt. # 307) and awards costs of $6,288.37 and attorneys' fees of $403,684.37.

DATED this 20th day of September, 2005.

_____
JAMES L. ROBART
United States District Judge

ORDER – 7